J-S10022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SILVIU BOGUS | : | |
| | : | |
| Appellant | : | No. 1108 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 4, 2019,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0002124-2018.

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 22, 2020**

Silviu Bogus appeals from the judgment of sentence, imposing 17 months to five years of incarceration, after a jury convicted him of driving under the influence[1] and found that he refused to take a breathalyzer test at law enforcement's request.[2]  We affirm.

On February 17, 2018, Bogus drove his automobile on a highway of the Commonwealth, and one of his tires went flat.  He pulled over.  Another motorist stopped to assist Bogus and immediately realized he "was highly intoxicated."  N.T., 4/18/19, at 60.  The Good Samaritan turned out to be an off-duty police officer. He believed Bogus "was one of the most intoxicated

_____

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] That refusal enhanced grading of Bogus' DUI offense, and, as a result, the factual finding heightened his penalty, pursuant to 75 Pa.C.S.A. §§ 3803(b)(4) and 3804(c)(3).

drivers [he had] encountered." *Id.* Soon, other officers arrived at the scene, and they arrested Bogus for DUI.

At the station, police read the Form DL-26 on implied consent to Bogus. He refused to take a breathalyzer test and instead demanded to speak with an attorney. One of the officers recorded a video of this interaction, and the trial court admitted that recording into evidence over Bogus' objection.

The video, which is about 90 seconds long, shows Bogus sitting on a bench in the police station as officers question him. His legs stretch directly forward, his ankles overlap, and his hands remain behind his back. While the video does not depict how police restrained Bogus (*e.g.*, handcuffs, zip ties, etc.), his positioning and movements indicate that officers have him bound and in custody. At times, the officers and Bogus talk over each other, and some words are not discernable. The discernable dialogue is as follows:

| | |
|---|---|
| OFFICER 1: | [*Off-camera*] I'm going to be videotaping your refusal. |
| BOGUS: | I'm not refusing anything. All I wanna do is ch- talk to my representative. That is legally justified to me, before I say anything. |
| OFFICER 1: | And you understand I'm- I'm videotaping our conversation now, right? |
| BOGUS: | Do you? Where's my representative? |
| OFFICER 1: | Will you submit to the breathalyzer test, as Officer . . . |
| BOGUS: | I need my representative to confide with me. |
| OFFICER 1: | . . . as Officer Hirneisen explained to you in the Pennsylvania DL-26 Form. |

BOGUS: [*Shakes his head "no"*] He didn't explain anything; he was just bullshit'n.

OFFICER 2: [*Off-camera*] I read it to you, sir.

BOGUS: Mm-mmm. You just read a whole bunch of nonsense that you didn't even understand. I want to talk to my legal representative.

OFFICER 1: Are you willing to . . . Are you willing to give us . . .

BOGUS: I wanna talk to my legal representative. No! I want to talk to my legal representative. That's all I wanna do.

OFFICER 2: Sir, as I indicated, Number Four states . . .

BOGUS: It doesn't matter.

OFFICER 2: . . . "You have no right to speak to an attorney before you . . ."

BOGUS: I have plenty of rights! I'm an American citizen.

OFFICER 2: " . . .before you decide whether to take the test."

BOGUS: You're a criminal! You're a gangster.

OFFICER 2: Are you refusing to take the test?

BOGUS: You're a- You're the one- that's harassing- the civilians. Why don't you get a real job and feel- what it feels like to- to lay bricks down- and towel?

OFFICER 2: Sir, are you refusing to take a breath test?

BOGUS: I ain't refuse'n anything; I- First of all, I asked for my representative!

OFFICER 1: Will you take the breath test now?

BOGUS: [*Leaning forward on bench*] No, I wanna talk to my representative.

OFFICER 1: Okay, thank you.

Commonwealth's Exhibit 2, Video at 0:00 – 1:28.

Based upon that video, and the testimony of various witnesses, the jury convicted Bogus of DUI. The jury also found that police provided him with the DL-26 Form but that he refused to submit to chemical testing. Following his conviction and sentence, as described above, Bogus timely appealed to this Court.

Bogus raises one issue on appeal. He asks, "Did the [trial court] err in denying a motion . . . to preclude admission of an inflammatory video with accompanying audio of the handcuffed [Bogus] in the police station during a [DUI] investigation pursuant to [Pennsylvania Rule of Evidence] 403?" Bogus' Brief at 4.

Bogus' question regarding whether the trial court "erred" by admitting the video into evidence implies that he misconstrues our deferential standard of review for an evidentiary issue. This Court may not decide whether a trial court's evidentiary ruling was simply incorrect, because, as Bogus concedes, such a ruling "rests within the sound discretion of the trial court." *Id.* at 2 (citing *Commonwealth v. Flor*, 998 A.2d 606, 623 (Pa. 2010)). As such, the issue we must decide is whether admitting the video into evidence was an abuse of discretion, because we may "not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion." *Flor*, 998 A.2d at 623. "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias,

prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Santos**, 176 A.3d 877, 882 (Pa. Super. 2017).

After first acknowledging this deferential standard, **see** Bogus' Brief at 9-10, Bogus neither argues nor demonstrates an abuse of discretion. Granted, Bogus contends that, because "the prejudice [from the video] impacted the jury's ability to decide material issues in the case on a proper basis and without undue influence, the trial court's decision to admit the video . . . was clearly unreasonable." **Id.** at 10. However, his premise (even if we accepted it as true) fails to establish that the trial court's decision was manifestly unreasonable. Instead, Bogus' premise that the video prejudiced the jury to decide his case on an improper basis, is no more than an attempt at relitigating the evidentiary ruling on appeal. Bogus has therefore improperly framed his appellate argument.

Under Rule 304, balancing the probative value of proffered evidence against its unfairly prejudicial effect upon a jury is precisely an evidentiary ruling that "rests within the sound discretion of the trial court." **Flor**, 998 A.2d at 623. The Supreme Court of Pennsylvania, in promulgating Rule 304, explicitly empowered trial courts to exercise their discretion in this regard. A trial court "**may** exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403 (emphasis added). The

permissive "may" affords trial courts great discretion in deciding whether to exclude relevant evidence as unfairly prejudicial under Rule 403.[3]

Even if we agreed with Bogus that the unfair prejudice from the video outweighs its probative value, Rule 403 did not obligate the trial court to exclude it, *per se*. The trial court still retained the discretion to admit the relevant-but-prejudicial video, provided the trial court articulated a reasonable basis for doing so. As the trial court explained, "Rather than provide just [testimony] by a police officer, the Commonwealth chose to present the jury with, perhaps, the best, the least-biased form of such evidence: a video of [Bogus] himself on the night of his arrest, while intoxicated and ***in the process*** of refusing the chemical test." Trial Court Opinion, 9/10/19, at 4 (emphasis in original). The court concluded the video, therefore, "is precisely the type of evidence the jury should consider . . . to see [Bogus'] refusal itself and witness his uncooperative conduct." ***Id.***

This is a well-reasoned analysis explaining why the trial court admitted the video, despite its prejudicial impact upon the jury. Thus, even if we agreed with Bogus' premise that the video met the definition of "unfairly prejudicial" because it "impacted the jury's ability to decide material issues in the case on a proper basis and without undue influence," Bogus' Brief at 10, it would not logically follow from that premise that the trial court irrationally "weigh[ed]

---

[3] "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pennsylvania Rule of Evidence 403 *Comment*.

the relevance and probative value of such evidence against the prejudicial impact of that evidence." **Commonwealth v. Jones**, 683 A.2d 1181, 1193 (Pa. 1996). At best, it might show that the trial court made an error in judgment by admitting the video. Thus, Bogus' argument leaves unanswered the question of why the trial court's balancing under Rule 403 was logically flawed, and, therefore, manifestly unreasonable.

Rather than supporting his claim that the "decision to admit the video into evidence . . . was clearly unreasonable," Bogus' Brief at 10, Bogus invites us to substitute our judgment for that of the trial court as to whether the video was unfairly prejudicial. He further asks us to conclude that the trial court should have excluded that video from evidence. For example, he contends the video "contains substantial and troubling characteristics that would necessarily prejudice the jury's ability to consider the facts and impinge upon the presumption of innocence." **Id.** at 11. "Furthermore," he says, "the video contains aspects that would . . . inflame the passions of the jury . . . ." **Id.** at 12. Bogus elaborates upon those two assertions, as if we could review the admission of evidence de novo and replace the trial court's evidentiary decisions with our own. But, as our standard of review makes clear, such decisions are not ours to make.

To succeed on an abuse-of-discretion challenge, an appellate argument must explain how the trial court (1) misinterpreted a Rule of Evidence; (2) reasoned fallaciously; or (3) acted based on bias, prejudice, or ill will. Bogus'

argument does none of the above. Accordingly, he fails to convince us that the trial court committed an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/22/2020